IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KENNETH L. HANSEN, )
)
    Plaintiff, )
)
vs. ) Case No. 4:14-CV-00120-TLW
)
CAROLYN W. COLVIN, )
)
Acting Commissioner of Social Security )
Administration, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff Kenneth L. Hansen seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 216(i), 223(d). In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 7). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a 62-year-old male, applied for benefits under Title II on November 18, 2010. (R. 62-64). Plaintiff alleged a disability onset date of October 15, 2010. (R. 141). Plaintiff claimed he was unable to work due to damaged rotator cuffs and biceps, carpal tunnel, back trouble, shoulder and bicep injuries, diabetes, and depression. (R. 63, 132). Plaintiff's claim for benefits was denied initially on June 2, 2011, and upon reconsideration on October 4, 2011. (R. 65, 73). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 76-79). The ALJ held the hearing on September 13, 2012. (R. 23-61). The ALJ issued a decision on October 24, 2012. (R. 6-18). The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner. (R. 1-4). Plaintiff timely filed an appeal. (Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through June 30, 2014. (R. 11). The ALJ found that plaintiff had not performed any substantial gainful activity since his alleged onset date of October 15, 2010. Id. At step two, the ALJ determined that plaintiff had the severe impairments of degenerative disc disease, bilateral shoulder impairments, episodic gout, diabetes mellitus, and obesity. Id. The ALJ additionally found that plaintiff's carpal tunnel syndrome was a non-severe impairment. (R. 11-12). After analyzing the "paragraph B" criteria for mental impairments, the ALJ determined that plaintiff's "medically determinable mental impairment of depression" was also non-severe. (R. 12).

At step three, the ALJ determined that plaintiff did not meet or equal a listing. (R. 13). After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC for:

> a range of light work with no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds; standing/walking 6 hours out of an 8-hour workday; sitting 6 hours out of an 8-hour workday; no more than occasional stooping, and no overhead reaching.

Id. At step four, the ALJ found that although the plaintiff does have "medically determinable impairments, none are severe enough to prevent" him from working, given the RFC. (R. 18). At step five, the ALJ found that plaintiff had past relevant work as a user support analyst and that plaintiff could perform his past relevant work within the stated RFC. Id. Accordingly, the ALJ concluded that plaintiff was not disabled. Id.

**Carpal Tunnel Medical Records and Summary**

On September 8, 2008, at the request of Dr. Tyler Boone, plaintiff saw Dr. Scott Rahhal for an evaluation of "significant pain" in both of his shoulders. (R. 287). Dr. Rahhal referred plaintiff to Dr. James Bischoff for complaints of carpal tunnel syndrome. Id. On September 10, 2008, Dr. Bischoff examined plaintiff for "tingling and numbness of both hands and locking of long, ring and little fingers bilaterally." (R. 286). The record reflects Dr. Bischoff's impression of severe carpal tunnel, with the "left greater than the right with thenar atrophy in addition to stenosing tenosynovitis of long, ring and little fingers bilaterally." Id. Dr. Bischoff discussed therapeutic options with plaintiff and referred him to Dr. John Cattaneo for a bilateral electromyography (EMG) test.

On September 15, 2008, Dr. Cattaneo conducted an EMG test of plaintiff's bilateral upper extremities. The record reflects Dr. Cattaneo's impression:

1. Severe left median neuropathy at the wrist.
2. Moderate/severe right median neuropathy at the wrist.

3. Moderate, chronic right ulnar neuropathy at the elbow.

(R. 296-302) (emphasis in original). Following the EMG exam, plaintiff returned for a follow-up visit with Dr. Bischoff on September 22, 2008. (R. 284). Dr. Bischoff determined that plaintiff's EMG was "positive for severe bilateral carpal tunnel syndrome as well as right cubital tunnel syndrome." Id. Dr. Bischoff informed plaintiff that he was a "candidate for surgery for open left carpal tunnel release in coordination with Dr. Rahhal's shoulder surgery[.]" The record does not reflect any further treatment, surgery, or consultations regarding plaintiff's carpal tunnel diagnosis.

On April 12, 2011, plaintiff received a consultative exam from Dr. Subrmaniam Krishnamurthi. (R. 234-240). Dr. Krishnamurthi concluded that plaintiff could "effectively oppose the thumb to the fingertips," as well as "manipulate small objects" and "effectively grasp tools such as a hammer." (R. 240). Furthermore, Dr. Krishnamurthi noted that plaintiff's "[m]otor, sensory, and reflexes are within normal limits" and that he had "[n]ormal sensation to pain and temperature as well as light touch in all four extremities." (R. 235-36).

On August 12, 2012, Dr. Ty Stansill, plaintiff's treating physician, completed a Medical Source Statement. (R. 272-73). Dr. Stansill noted that plaintiff "has numbness/tingling in hands [that] make fine manipulation impossible." (R. 273).

At the disability hearing on September 13, 2012, plaintiff testified that while he was working from home taking part orders or assisting customers with equipment, he was unable to type call reports. (R. 35-36). Plaintiff testified that he would "take some rudimentary notes," and his wife would type them for him. (R. 36). In addition, plaintiff testified as to the problems with his hands, explaining that

> they're stiff and numb and have shooting pains and tingling in them all the time. I have almost no grip, I drop almost everything I pick up. My wife won't let me set the table any more or help in the kitchen because I drop things. I can't get

> dressed by myself, my wife had to dress me today, I can't do buttons or zippers
> or snaps. I usually wear slip on clothes and I have a great degree of difficulty
> using the restroom and personal hygiene because I can't tell where my hands are
> [i]f I can't see them.

(R. 43). Furthermore, plaintiff stated that doctors recommended carpal tunnel surgery but also said "there was only about a 30 percent chance of it being successful" because "there was so much damage to the tissue." (R. 39, 43).

## ANALYSIS

Plaintiff raises three issues on appeal:

1. The ALJ erred when he found that the claimant is capable of performing past relevant work as a user support analyst;

2. The ALJ erred in determining plaintiff's carpal tunnel was non-severe; and

3. The ALJ erred in finding that plaintiff does not meet a listing.

(Dkt. 13 at 5-6).

**Past Relevant Work**

Plaintiff's primary argument with respect to his past relevant work is that the ALJ relied upon the "tortured" testimony of vocational expert (VE) Melissa Monroe-Brassfield. Plaintiff contends that her testimony was "conflicted and confusing, and should not have been accepted or relied upon." (Dkt. 13 at 6) (citations omitted). Alternatively, plaintiff contends that the VE's testimony does not support the ALJ's RFC because "what [the VE] seemed to say was that the Claimant could not be expected to return to his previous employment with his current infirmities." Id.

In the first hypothetical question to the VE, the ALJ described the following individual,

> [A] 64-year-old male with a high school education with good ability to read
> and write and use numbers, who can perform work in a range of light work
> defined as no more than the occasional lifting up to 20 pounds, no more than a
> frequent lifting or carrying up to 10 pounds. Standing, walking six hours out

5

> of an eight-hour workday, sitting six hours out of an eight-hour workday. No more than occasional stooping and no overhead reaching.

(R. 49). The VE testified that with this RFC, the individual described could perform plaintiff's past relevant work as a user support analyst, both as plaintiff performed it and as normally performed. (R. 49-50). The user support analyst job is sedentary and does not require overhead reaching or more than occasional stooping. (R. 49). Furthermore, the ALJ specifically asked the VE "if you compared each and every duty over and above those specific duties on a function by function basis are you saying that this job could be performed within this RFC?" Id. The VE answered that it could, both as plaintiff performed it and as normally performed. (R. 49-50).

In addition, the VE stated that plaintiff does not have "any skills transferable to light or sedentary jobs under that RFC" because the skills are "[v]ery job specific." (R. 50). The VE described plaintiff's report writing as a secondary skill and his "specific knowledge with the transmitters" as a primary skill. Id. The VE concluded that because there would "be an adjustment in the industry" she did not think plaintiff could obtain a job as a supervisor in another industry. Id.

For the second hypothetical question, the ALJ had the VE reference the physical medical source statement from Dr. Stansill to determine whether there would be any light, unskilled jobs that plaintiff could perform. (R. 51, 272-73). The first page states that plaintiff could occasionally lift or carry twenty pounds and could frequently carry less than ten pounds, could stand or walk for less than thirty minutes at one time without sitting or lying down, could stand and/or walk for less than two hours total (with normal breaks) in an eight-hour workday, could sit for one to two hours at one time, and could sit for six or more hours total (with normal breaks) in an eight-hour workday. (R. 272). The VE testified that plaintiff could perform his past relevant work as a user support analyst:

> ALJ: Could the, under that could the past relevant work as a user support analyst be performed?
>
> VE: If we were looking at it being a full eight-hour day then yes, that job could be performed.

(R. 52).

The VE also considered the second page of the medical source statement from Dr. Stansill. Id. This statement indicates that plaintiff cannot walk a block at a reasonable pace because he must stop to rest due to hip and leg pain. (R. 273). Dr. Stansill also states that plaintiff's "pain would limit his ability to continuously work 5 days a week" and that his breaks would be long and often. Id. In addition, the form indicates that plaintiff could not lift above his head and that his "numbness and tingling in hands make fine manipulation impossible." Id. Lastly, Dr. Stansill states that plaintiff would miss work three or more times per month due to lower back pain. Id. Upon examining the second page, the VE stated she did not believe plaintiff could maintain employment if "he's going to have unscheduled absences and those were going to exceed two days a month." (R. 52).

When plaintiff's counsel began examining the VE, he asked for clarification of the first hypothetical.

> ATTY: …I guess the first hypothetical where he asked you if he could perform the past work as it was actually performed and versus generally performed. I understood you to say I thought it's generally he has – he would normally have to do the typing, is that right?
>
> VE: Yes.
>
> ATTY: So wouldn't it be accurate to say that the way he performed it was not the way it was generally performed?
>
> VE: That would be accurate.
>
> ATTY: Okay. And so if – I guess what I'm getting at is if he had these … If he had the hand problems that he described, just the handling and stuff, he wouldn't be able to perform it as it's generally performed and would only be able to perform it with some kind of accommodation like he had, is that correct?

> VE: Yes. That job does require frequent reaching and handling and fingering, so if the person was unable to do that … he could not do that job.

(R. 53-54). The VE then clarified that there were two differences between the DOT and how plaintiff performed the job. (R. 54). She stated the first difference was that plaintiff "testified to have accommodations as far as his wife was doing the typing for him," which generally "would not be the situation, a person would be doing their own typing." Id. Second, because the DOT does not contain anything similar to a user support analyst for transmitter, she used a computer support analyst by analogy. Id.

Plaintiff's counsel then modified the hypothetical to include a hand limitation.

> ALJ: …Okay, so the accommodation was his wife typing as the claimant performed it so, so my question – my hypothetical one did not have a hand limitation would be as normally performed, right?
>
> VE: Yes.
>
> ALJ: Okay. And then counsel indicated occasional handling or what?
>
> ATTY: Really I guess I was –
>
> ALJ: Less than frequent?
>
> ATTY: – I guess the hypothetical –
>
> ALJ: Well you were doing hypothetical one plus –
>
> ATTY: Yeah. Yeah, if you had hypothetical one plus occasional fingering and handling or really virtually any – if, if you had occasional fingering and handling then it would preclude those jobs, correct?
>
> VE: Yes, it would.
>
> ATTY: As performed or as he actually did it I assume?
>
> VE: Yes.
>
> ATTY: And, and I think part of my theory of this case is that he was – that job was with accommodation as well, which I'm not sure where that really puts it. He – it was, you know it, I don't – it was kind of a made up job just because of his experience so –
>
> ALJ: Well I don't think it would – that he performed it differently than what's normally performed.
>
> ATTY: Right.
>
> ALJ: And, and so with no, with no more than occasional you say handling, fingering and feeling?

8

>ATTY: Right.
>
>ALJ: And there would be no, no other light or sedentary jobs?
>
>VE: At the unskilled level?
>
>ALJ: No, semiskilled.
>
>VE: At the semiskilled level?
>
>ALJ: Yeah, you said there was [sic] no transferable skills, okay.
>
>VE: No.

(R. at 54-56).

The VE's testimony is understandable and sufficiently clear. The VE responded to each hypothetical, including a number of clarifications sought by the ALJ and plaintiff's counsel, and she gave a clear answer to each question, both before and after the clarifications. Any inconsistency in the VE's ultimate conclusions is the result of being asked different questions with different limitations, which resulted in different answers. The Court finds no reversible error in the mere fact that the ALJ relied on the VE's testimony.

As to the limitations included in the various hypotheticals, hypothetical questions to a VE "need only reflect limitations and impairments that are borne out by the evidentiary record." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ did not include manipulative limitations in the first hypothetical. (R. 49). Such limitations are not borne out by the record. The ALJ noted that although plaintiff "reported hand numbness and decreased feeling and strength on July 12, 2011," three months earlier, "it was noted the [plaintiff] had 5/5 motor strength in hand grips bilaterally and normal sensation to light touch in all four extremities." (R. 16; see also R. 234-40, 325). In addition, the ALJ concluded that, for more than two and a half years, plaintiff did not report any "further incidences of loss of sensation or strength in his hands to treating physicians (3F and 12F)." (R. 16). Furthermore, the ALJ noted that although an EMG indicated bilateral carpal tunnel syndrome, "the record reflects no actual treatment for this alleged impairment[,]" which is "inconsistent with the alleged severity of the functional limitations

imposed by this impairment and diminishes the credibility of those allegations." (R. 11; see also R. 179-336).

Based on plaintiff's testimony that in his previous job, his wife assisted him with the fine motor skills, such as typing, plaintiff's counsel added a limitation of occasional fingering and handling to the ALJ's first hypothetical. (R. 53-55). See Bias v. Astrue, 484 F. App'x 275, 276 (10th Cir. 2012) (unpublished). The VE testified that such a limitation would preclude other semiskilled jobs. (R. 53-55). Plaintiff impliedly argues that the VE said plaintiff could not work under his counsel's hypothetical. However, as the ALJ properly noted, plaintiff's testimony as to the special accommodation from his employer is unsupported by the record. (R. 16). In addition, although the medical records indicate that plaintiff was diagnosed with severe carpal tunnel syndrome and was a candidate for surgery, the record does not reflect that a physician placed any physical limitations on plaintiff. (R. 284, 286, 296-302).

The ALJ's RFC accurately reflects the hypothetical posed to the VE. (R. 13, 49). In Bias, the Tenth Circuit held that "when it comes to posing a hypothetical to a vocational expert, if substantial evidence supports an ALJ's finding that a 'non-severe' impairment does not create any work-related limitations, the ALJ is not required to include that impairment in his hypothetical." Bias, 484 F. App'x at 276; see also Buckner v. Astrue, 646 F.3d 549, 561 (8th Cir. 2011) (an ALJ may omit alleged impairments from a hypothetical question when "[t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities" or "when the record does not support the claimant's contention that his impairments 'significantly restricted his ability to perform gainful employment.'") (quoting Owen v. Astrue, 551 F.3d 792, 801-02 (8th Cir. 2008)). Because the manipulative limitation is not supported by the record, the ALJ's decision not to include it in the hypothetical is not reversible error.

Furthermore, the ALJ properly cited reasons not to credit the evidence supporting the hypothetical that plaintiff's counsel offered. The ALJ noted that aside from the EMG in September 2008, the record does not reflect plaintiff seeking any treatment for his carpal tunnel syndrome. (R. 11). The consultative examiner found that plaintiff had normal sensation to pain, temperature, and light touch in his extremities and also had full motor strength in both hands. (R. 11; 234-40). In addition, the ALJ placed great weight on the consultative examiner's opinion assessing that plaintiff could manipulate small objects and effectively grasp tools such as a hammer. (R. 11-12). Therefore, the Court finds that the ALJ's hypothetical is "borne out by the evidentiary record" and is supported by substantial evidence and that the ALJ did not err in adopting the VE's testimony when formulating plaintiff's RFC. Decker, 86 F.3d at 955; see also Moua v. Colvin, 541 F. App'x 794, 798 (10th Cir. 2013) (holding that plaintiff did not point to any evidence that identified some impairments caused work limitations, and therefore, the hypothetical question was "borne out by the evidentiary record.")

**Non-Severe Impairment**

Plaintiff contends that the ALJ erred in determining his carpal tunnel syndrome to be non-severe. Plaintiff argues that the ALJ concluded his carpal tunnel syndrome was not severe "in part, because [] [plaintiff] did not seek further medical treatment for his diabetic nerve injury condition for which there is no assured surgical remedy." (Dkt. 13 at 8). Plaintiff also states that the ALJ "apparently presume[d] spontaneous healing" of the carpal tunnel syndrome "from the absence of follow-up care." Id. In addition, he argues that the ALJ "justifie[d] his illogical reasoning" by relying on the report of the consultative examiner, Dr. Krishnamurthi, whom plaintiff refers to as "the Tailor." Id. Plaintiff testified "he felt like he was at a tailor's shop being measured for a suit" because Dr. Krishnamurthi only "measured circumferences and lengths of

Claimant's extremities with a tape measure" and did no other physical examination or testing of plaintiff's range-of-motion or dexterity. Id.; (see also R. 43).

To the extent that plaintiff claims the ALJ erred by finding his carpal tunnel syndrome to be non-severe, he has only raised a step two issue, and he does not explain why any error at step two was harmful. Specifically, any error at step two in this case was harmless because the ALJ found other severe impairments and determined that plaintiff "could not be denied benefits conclusively at step two and proceeded" with the evaluation process. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). For this reason alone, plaintiff's allegation of error could be rejected. Nonetheless, although plaintiff did not raise a step four RFC argument, the Court will consider whether the ALJ's failure to include limitations related to plaintiff's carpel tunnel syndrome in plaintiff's RFC otherwise amounts to reversible error.

The ALJ noted that the EMG in September 2008 indicated bilateral carpal tunnel syndrome, but the ALJ also observed that plaintiff did not seek actual treatment for the impairment. (R. 11; see also R. 234-40; see generally 179-306). The ALJ determined that the "absence of treatment for this impairment is inconsistent with the alleged severity of the functional limitations imposed by this impairment and diminishes the credibility of those allegations." (R. 11). In Qualls v. Apfel, the Tenth Circuit held that the ALJ "properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, after being diagnosed with severe carpal tunnel and being informed of his candidacy for surgery, plaintiff failed to seek any form of follow-up treatment. (R. 179-306).

However, once a claimant demonstrates a pain-causing impairment, "the decision maker must consider all the evidence [of the pain-causing impairment] presented that could reasonably

produce the pain alleged." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). The ALJ considered the consultative examiner's assessments that plaintiff had normal sensation to pain, temperature, and light touch in his extremities and that plaintiff had 5/5 motor strength in both hands. (R. 11; see also R. 234-40). The ALJ afforded the consultative examiner's opinion great weight because his objective findings on examination were consistent with the record. (R. 11-12). Furthermore, the ALJ contemplated plaintiff's allegations of limited daily activities, including difficulty dressing, using the restroom, and maintaining personal hygiene, but he found these alleged limitations to be outweighed by other factors. (R. 14, 17).

The ALJ also found that plaintiff lacked credibility. (R. 14). The ALJ found plaintiff's allegations were inconsistent with the record because the record showed plaintiff neither received any subsequent treatment nor complained of continuing problems with his shoulders, back, and hands. (R. 15-16). The ALJ also noted that the consultative examiner's findings did not fully support plaintiff's allegations. Id. In addition, the ALJ observed there was "no evidence of a significant deterioration in the claimant's medical condition since" his layoff. (R. 16). The ALJ determined that plaintiff's receipt of unemployment compensation during the relevant time period is inconsistent with his claim for disability.[1] (R. 17).

Finally, plaintiff does not challenge the ALJ's credibility findings, and plaintiff's statements are the only evidence of any functional limitations related to his 2008 carpel tunnel diagnosis. (See dkt. 13); Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co., 891

---

[1] See Pickup v. Colvin, 606 F. App'x. 430, 433 (10th Cir. 2015) (unpublished) (holding that the ALJ properly concluded the plaintiff was not credible because she received unemployment benefits after her job termination). As the Tenth Circuit stated, "[t]here is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits." Id. (emphasis in original).

F.2d 772, 776 (10th Cir. 1989) ("An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal.").

Therefore, the Court concludes that the ALJ considered all the evidence pertaining to plaintiff's carpal tunnel impairment, that the ALJ did not err in considering what attempts plaintiff made to relieve his pain, and that the ALJ did not err in failing to include limitations in plaintiff's RFC related to the carpal tunnel syndrome.

Plaintiff also focuses on the ALJ's weighing of the medical source opinions. Plaintiff alleges that the ALJ placed deferential weight on the opinion of Dr. Krishnamurthi, a consultative examiner, over the opinion of his treating physicians, Drs. Stansill, Bischoff, and Cattaneo without actually developing a treating physician argument. Again, plaintiff has only raised a step two issue, and any error at step two in this case was harmless because the ALJ found other severe impairments and determined that plaintiff "could not be denied benefits conclusively at step two and proceeded" with the evaluation process. Carpenter, 537 F.3d at 1266.

## Listing

Plaintiff argues that the ALJ erred in concluding that plaintiff does not have an impairment or combination of impairments that meets a listing. (Dkt. 13 at 9). Plaintiff alleges that together, his severe impairments—degenerative disc disease, bilateral shoulder impairments, episodic gout, diabetes mellitus, and obesity—and his bilateral carpal tunnel syndrome "combine to make the Claimant disabled on his last day at work – October 15, 2010." Id. Therefore, plaintiff claims the ALJ erred in concluding plaintiff was not impaired on that date. However, plaintiff fails to identify what listing he claims he meets, and he does not develop this argument. See Wall v. Astrue, 561 F.3d 1048, 1065 (10th Cir. 2009) ("Where an appellant lists an issue, but

does not support the issue with argument, the issue is waived on appeal.") (citing Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031 (10th Cir.2007)).

Moreover, the ALJ considered Sections 1.00, et. Seq., Musculoskeletal System; 3.00, et. Seq., Respiratory System; 4.00, et. Seq., Cardiovascular System; 5.00, et. Seq., Digestive System; 6.00, et. Seq., Genitourinary Impairments; 11.00, et. Seq., Neurological; and 12.00, et. Seq., Mental. See 20 C.F.R. pt. 404, Subpart P, Appendix 1. (R. 13). The ALJ must determine whether the medical findings are at least equal in severity and duration to the medical criteria in the listing. Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988). Here, the ALJ examined the listings and determined that the medical evidence did "not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."[2] (R. 13).

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's claims for benefits is AFFIRMED.

SO ORDERED this 25th day of August, 2015.

_____
T. Lane Wilson
United States Magistrate Judge

---

[2] In his "listing" argument, plaintiff asserts that the "ALJ's decision to deny the Claimant disability seems to be more focused upon the fact that the Claimant sought unemployment benefits in 2011 – this at a point-in-time after he was first denied SSD," and that the "ALJ appears to punish the Claimant for his willingness to accept unemployment benefits while going through the futile efforts to find replacement employment." (Dkt. 13 at 10) (emphasis in original). Plaintiff's contention regarding unemployment benefits has no bearing on the matter of meeting a listing.